[Crim. No. 31008. Second Dist., Div. Two. June 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICKEY L. DUDLEY, Defendant and Appellant.

## COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Kent L. Richland and Joseph Levine, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda, Sandy R. Kriegler, William R. Ponders, Robert F. Katz and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—After a jury trial defendant was convicted of one count of first degree robbery. He appeals the judgment of conviction.

Defendant along with codefendant Smith committed an armed robbery of a market in Huntington Park about 8 p.m. on November 26, 1976. Smith was armed with a shotgun during the robbery. At the time of the robbery the owner, Choong Whan Lee, and a customer, Jesus Sosa, were in the customer area of the market; Lee's wife and three children were in

the area where the family resided; and Lee's mother-in-law, Soo Park, was outside with a baby. The robbers herded all parties into the living area and forced them to lie down. Defendant was the one who pushed Soo Park into the market and forced her into the living area. Following the robbery, some $1,500 to $1,600 in cash and checks was missing from the cash register.

At 10 a.m. the next day, November 27, Huntington Park police officers Senf and Farris were investigating a traffic collision of three vehicles. Farris observed codefendant Smith in one of them, a black-over-green 1970 Pontiac. Defendant said he had been the driver of that vehicle. In plain view in the vehicle was a shotgun, whose stock protruded from between the front bucket seats. Defendant, who appeared to be inebriated, stated he was smoking "weed" and had taken a drug, probably Thorazine. No cash or money orders were found in the vehicle, and defendant had only about $12 on him. James Windley, a friend of defendant, testified he had lent the vehicle to defendant. Neither he nor defendant explained the gun's presence in the vehicle.

Shortly after these events three of the victims, Lee, Sosa, and Soo Park, identified the robbers from photographs. The facts surrounding the photographic identifications were developed out of the presence of the jury under Evidence Code sections 402 and 405, subdivision (a) as follows: Officer Hood of the Huntington Park Police Department testified that he came to the market and laid a group of six photographs on the counter in front of Soo Park. Since she spoke no English, son-in-law Lee acted as interpreter. Hood told Mrs. Park to look at the photographs, which might possibly depict a suspect in the robbery, not to pick one out if she were not sure. Soo Park identified both the defendant and Smith as the robbers. During the hearing the court called Lee as its own witness, a procedure to which there was no objection below but to which defendant now excepts on appeal. Lee testified he did not point to any one picture and that he told Soo Park she should choose by herself.

At trial, Lee, Soo Park and Jesus Sosa positively identified defendant as the robber without the gun. Additionally, Lee testified that defendant was one of two men whose photographs he had picked out from a group shown him at the Huntington Park police station.

Defendant presented an alibi defense, corroborated by testimony of friends.

■ The trial court correctly refused to suppress the use of the shotgun in evidence. The arresting officer testified the loaded shotgun was in plain sight in the automobile, and that he observed it during the course of a legitimate investigation into a traffic accident. Defendant admitted he had been driving the vehicle.

■ We find no error or unfairness in the procedures used to identify defendant or in the procedures followed in using photographs for identification. Nothing suggests any unfairness in the court's action in calling Lee as its own witness to review the identification procedure.

The refusal to give CALJIC No. 2.71 precautionary instruction on admissions was at most harmless error. In view of the strong positive identification of defendant by three eyewitnesses, it is not reasonably probable that a result more favorable to the accused would have been reached had the instruction been given.

■ In pretrial proceedings the trial judge, the Honorable John Donnellan, conducted a Penal Code section 1368 proceeding, and determined that defendant was competent to stand trial. Defendant asserts as error Judge Donnellan's failure, *sua sponte,* to suspend trial proceedings and reopen the section 1368 hearing when, in the middle of the trial, he received information that in another proceeding pending before another judge defendant had been found not competent to stand trial.

Defendant had been a patient in a mental hospital for six months in 1975 and one month in 1976. Prior to trial in this case he was examined by two court-appointed psychiatrists, Doctors Abe and Walters, whose reports were submitted to the court at a hearing on February 23, 1977, to determine defendant's present competency to stand trial. Dr. Abe's report of his examination on January 18 indicated defendant was subject to schizophrenic mental illness but was presently able to understand the nature and purpose of the proceedings and to cooperate with counsel in providing a defense.

Dr. Walters' report of his examination on February 5 indicated that defendant was extremely uncooperative, that he had suffered past psychiatric episodes with a probable prior diagnosis of paranoid schizophrenia. Based on defendant's uncooperative attitude, Dr. Walters opined that defendant was not presently able to cooperate in a rational manner in presenting a defense. Judge Donnellan declared a doubt as to

defendant's present mental competence and continued the hearing to obtain a third psychiatric opinion. Defendant was examined on March 4 by Dr. Pollack, whose report stated defendant was presently competent to stand trial. At a hearing on March 17, Judge Donnellan ruled defendant mentally competent to stand trial. The trial began April 4 and ended April 12.

Meanwhile, under an unrelated criminal information pending since February 1976, in a different branch of the Los Angeles Superior Court, defendant faced charges of assault with a deadly weapon.[1] On February 4, 1977, the trial judge in that case, the Honorable Alfred Dibb, ordered an examination under Penal Code section 1368 into defendant's mental ability to stand trial. Defendant was examined by two psychiatrists—Dr. Deering on February 19, and Dr. Lieberman about March 9. Both examining psychiatrists concluded defendant could not understand the nature or purpose of the proceedings or cooperate in a rational manner with counsel in preparation of a defense.

On March 25, Judge Dibb, under Penal Code section 1368, declared a doubt as to defendant's present mental competence, suspended criminal proceedings, committed defendant to the California Department of Mental Health, and ordered the hospital superintendent to report on defendant's recovery progress at a hearing on June 27. However, Judge Dibb's ruling, subsequent in time to that of Judge Donnellan, was never formally communicated to Judge Donnellan, either by the sheriff, the clerk of the superior court, or the Los Angeles Public Defender.

At the hearing on probation and sentence Judge Donnellan recounted that on the second and third day of trial defendant's counsel had informally advised him that defendant had been found incompetent in another pending case. Judge Donnellan went on to state that during the rest of the trial he had carefully observed defendant and saw nothing to indicate any lack of competence.

Defendant here does not criticize Judge Donnellan's initial determination of competency. He argues that the fact that another judge, in another case involving a different charge, had reached a contrary conclusion required Judge Donnellan to conduct a second hearing on the issue in the case before him. We disagree.

---

[1] We take judicial notice of the court file in People v. Dudley, Los Angeles Superior Court No. A324374. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

■ Penal Code section 1368 requires a hearing when substantial evidence which casts doubt on defendant's present mental competency is presented to the court. (*People* v. *Pennington,* 66 Cal.2d 508, 518-520 [58 Cal.Rptr. 374, 426 P.2d 942]; *People* v. *Melissakis,* 56 Cal.App.3d 52, 62 [128 Cal.Rptr. 122].) The evidence must indicate that defendant is incapable of comprehending the charges against him and of cooperating with counsel in his defense.

A defendant is not entitled to a trial on the issue ". . . merely upon the statement of defense counsel that he believes the defendant is mentally incompetent." (*People* v. *Hays,* 54 Cal.App.3d 755, at p. 759 [126 Cal.Rptr. 770].)

■ Judge Dibb's decision here was simply an expression of his opinion based in turn on the opinion of two expert witnesses. These witnesses' examination of defendant was contemporaneous with and overlapping of the examination conducted by the expert witnesses upon whom Judge Donnellan relied. Judge Donnellan's knowledge of Judge Dibb's decision did not constitute that kind of substantial evidence which would compel us to hold, *as a matter of law,* that Judge Donnellan should have vacated his own decision on the issue.

The transcript of the trial including defendant's performance on the witness stand constitutes irrefutable evidence of the correctness of Judge Donnellan's decision. Judge Donnellan had a far greater opportunity to observe defendant than did Judge Dibb and the reports of the Doctors Abe and Pollack are, in our opinion, considerably more persuasive than those of the doctors who reported to Judge Dibb.

Aside from the simple fact that Judge Dibb reached a different conclusion, defendant has advanced no factual matters nor legal argument bearing on the correctness of Judge Donnellan's ruling.

The judgment is affirmed.

Beach, J., concurred.

**FLEMING, Acting P. J.**—I dissent.

The problem arises as a result of contemporaneous judicial rulings which gave diametrically opposed answers to the identical question: Was

defendant mentally competent to stand trial in March 1977? Yes, answered Judge Donnellan on March 17. No, answered Judge Dibbs on March 25. The answers of both judges were given as formal judicial rulings in proceedings under Penal Code section 1368 pending at the same time in different departments of the Los Angeles Superior Court. Which department of the superior court are we to believe?

Penal Code section 1368 requires a hearing when evidence which casts doubt on a defendant's present mental competency is presented to the court. (*People* v. *Pennington* (1967) 66 Cal.2d 508, 518-520 [58 Cal.Rptr. 374, 426 P.2d 942]; *People* v. *Melissakis* (1976) 56 Cal.App.3d 52, 62 [128 Cal.Rptr. 122].) This requirement is constitutionally mandated to insure defendant a fair trial. (*Pate* v. *Robinson* (1966) 383 U.S. 375, 385 [15 L.Ed.2d 815, 822, 86 S.Ct. 836]; *People* v. *Pennington, supra*; cf. *People* v. *Tomas* (1977) 74 Cal.App.3d 75, 87-92 [141 Cal.Rptr. 453].) Clearly, the existence of diametrically opposed judicial rulings on defendant's mental competency to stand trial in March 1977 casts a reasonable doubt on defendant's then mental competency, a doubt which the superior court in this cause should have, but did not, formally resolve and one which this court is unable to resolve. In my view the issue of defendant's competency to stand trial requires reconsideration on its merits.

I would, therefore, cut the Gordian knot of procedural niceties, reverse the judgment, and remand the cause to the trial court with directions to determine defendant's present competency to stand trial and retry him if found competent.

A petition for a rehearing was denied June 27, 1978, and appellant's petition for a hearing by the Supreme Court was denied August 10, 1978.