[Crim. No. 34518. Second Dist., Div. Two. Apr. 14, 1980.]

In re CHARLES B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHARLES B., Defendant and Appellant.

COUNSEL

Anne H. Sax, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Pamela M. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—Appellant was alleged and found by the trial court to be a minor coming within the provisions of Welfare and Institutions Code section 602 in that he was guilty of first degree murder in violation of Penal Code section 187. Upon being committed to the California Youth Authority (CYA), he appealed, contending:

1.  He was denied due process because of an impermissibly suggestive photographic lineup.

2.  There is insufficient evidence to sustain the petition.

3.  He did not intelligently and knowingly waive his constitutional right against self-incrimination before he made incriminating taped statements.

4. His commitment to the California Youth Authority was an abuse of discretion.

5. Ineffective assistance of counsel was a denial of his Sixth Amendment right to counsel.

On October 18, 1978, just after noon, Charles McWhorter was visiting at the home of a friend when he observed two young males apparently in the process of stealing his car, which was parked across the street. One of the youths started to drive away in the vehicle but McWhorter captured the other, who was appellant, and took him to appellant's residence on foot. When they arrived there, McWhorter was confronted by persons he gathered to be appellant's relatives, one of whom, Arthur Henderson, threatened to kill him if he did not release appellant. Fearful, McWhorter left the scene and reported the matter to police. Ernest J., appellant's codefendant and allegedly the second youth in the attempted auto theft, joined by Henderson (his brother), his sister and appellant left appellant's residence in the sister's car and proceeded to where McWhorter's vehicle had been abandoned, with the notion of finding McWhorter there or in the vicinity and taking retaliatory action against him. When McWhorter was so discovered, he was against his pleas to the contrary gunned down at close range by three shots and ultimately died from his wounds. Thomas Evans, a stranger to the participants in the encounter, witnessed the events from his own auto stopped at an intersection close by the scene. He testified the shooter's face was clearly visible to him in spite of the presence of a bandana wrapped about his head and that he recognized another of the assailants even though the latter was wearing a hat with the brim pulled down. The third male had no headgear of any sort. Evans' ultimate conclusion was that Ernest J. was the shooter.[1] Appellant's disposition was premised upon his aiding and abetting the murder.

■ Appellant's initial contention is without merit. While it is true that in one of the two photographic lineups shown Evans appellant ap-

---

[1] It is clear from the record Evans, while he sufficiently perceived the identities of the three men, was confused respecting the roles they played in the shooting. Thus he initially, through a photo lineup, and again at trial identified appellant as the person who shot McWhorter. When he then observed appellant and Ernest J. together in the courtroom he allowed as how the latter was the one who fired the shots, because he appeared more mature physically, the assailant having been the older of the trio. In fact it was Henderson who was, at 24, the eldest and who was thought even by the prosecution to be the shooter, though that was never established at this trial. We can but speculate whether that surmise was instrumental in the trial court's dismissing the petition as to Ernest J.

peared with a bandana on his head when his was the only picture depicting that particular attire, it is likewise the case that two of the other photos showed persons with different headgear (i.e., stocking cap and hairnet, respectively), that Evans was specifically admonished by the police officer in charge that Evans was not obliged to select anyone, the procedure being as much for elimination as identification, and that Evans' unimpeached testimony was that he chose appellant from that photo lineup because of "the broadness and face and the eyes." When questioned further to the effect, "Q. Now, what if any impact did the fact that that person is wearing a scarf around his head have in your selection of that photograph?" Evans replied, "A. Nothing as far as that bandana go. [*sic*] It is the face here, the nose and the eyes. Because he looked straight at me sitting in my car, and actually I wasn't sure at that time whether he was going to start shooting at me, but he went back to the other car. So this made me pay more attention to him at that time, because at that time I felt I was in danger."

Under such circumstances it cannot be said appellant has satisfied the requirement of demonstrating unfairness in the identification procedure such as will support his claim he was thereby denied due process. (*People* v. *Hunt* (1977) 19 Cal.3d 888 [140 Cal.Rptr. 651, 568 P.2d 376].)

■ Similarly unmeritorious is appellant's contention the evidence was insufficient to support a finding he was guilty of first degree murder as an aider and abettor in the killing. His admission to police officers that, after McWhorter had voluntarily left appellant's residence and was being tracked down by the assailant and his cohorts, including appellant, appellant pointed him out on the street as the one being sought, alighted from the car together with the others and in effect participated in holding the victim at bay while the shooting took place, sufficiently established not only his assistance in the crime but facts from which it could reasonably be inferred he did so with requisite criminal intent. (See *People* v. *Villa* (1957) 156 Cal.App.2d 128 [318 P.2d 828]. See also *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed. 2d 560, 99 S.Ct. 2781].)

That appellant did point out McWhorter just prior to his murder was disclosed by appellant in a tape-recorded interview with police. It is maintained that that and the other of his recorded statements were obtained in violation of the proscriptions set out in *Boykin* v. *Alabama*

(1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], though it is conceded the interview was arranged by appellant's counsel and that appellant was fully advised of his rights in accordance with *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Support for the contention, appellant maintains, is found in *In re Michael M.* (1970) 11 Cal.App.3d 741 [96 Cal.Rptr. 887]. We disagree. ■ That case, which applied the *Boykin-Tahl* rule to its own facts, made clear that when one in a judicial context in effect makes statements or permits his counsel to make statements which are the equivalent of a plea of guilty without his waiver of his rights respecting self-incrimination and confrontation of accusers being clearly and expressly "spread upon the record," no effective waiver of such rights has occurred. Here, however, no such context was involved nor were appellant's statements in any wise the equivalent of a plea, however incriminating they might have been. Instead what transpired was no more than that, upon the solicitation of appellant's counsel, an interview with police took place wherein after being advised he need not do so, appellant nevertheless made statements which were later used against his interests. No error was associated with such a procedure.

■ Nor was there error in appellant's commitment to the CYA. Where the circumstances of the case are such as to indicate such a disposition and the trial court in the exercise of its sound discretion so determines, its decision will not be set aside. (*In re John H.* (1978) 21 Cal.3d 18 [145 Cal.Rptr. 357, 577 P.2d 177]; *In re Clarence B.* (1974) 37 Cal.App.3d 676 [112 Cal.Rptr. 474].) Here the court observed: "Well, I would like to make it clear that I have considered all the dispositional alternatives that are available to the Court in this case and I have observed also this is not the first time that this young man has been involved in an act of violence or an act of threatened violence, and particularly I have noted that this boy has been to camp for an armed robbery.

"I think all things considered, particularly in view of the fact that he has been on probation, he has been to camp, he has been to placement, that it is clear to me at least that the best opportunity for his rehabilitation will be in the Youth Authority.

"I will make a finding that he has been tried on probation and such custody has failed to reform and further that his welfare requires that

his custody be taken from his parent[s] and I will further find that his qualifications and physical conditions are such as to render it probable that he will be benefited by the reformatory, educational, discipline and other treatment provided by the Youth Authority." These findings and the disposition based thereon are amply supported in the record.

Finally, appellant maintains trial counsel was ineffective in that a jury trial was waived, no evidence was introduced to the effect McWhorter beat appellant prior to taking him to his residence and no objection was made to the introduction of appellant's tape-recorded interview with police. It is enough to say respecting the first of these claims nothing appears which would indicate appellant's trial was less than fairly conducted and the disposition following anything other than what was clearly required. Nor is it apparent the decision, if such there were, not to raise the question of McWhorter's suggested conduct toward appellant did not depend upon a considered judgment that to do so would entail greater risk than its forbearance. Similarly nothing is present in the record nor advanced by appellant which would have made tenable a motion to suppress appellant's voluntary statements concerning the crime.

Under such circumstances, it is not for us to speculate as to counsel's competence and we are neither at liberty nor disposed to find inadequate representation based solely on conjecture. (See *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

The order appealed from is affirmed.

Fleming, J., and Beach, J., concurred.

A petition for a rehearing was denied May 9, 1980.