[Crim. No. 13608. Fourth Dist., Div. One. Oct. 5, 1982]

THE PEOPLE, Plaintiff and Respondent, v.
CALEB L. McCLELLAND, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Barbara A. Smith, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.**\*—Having been charged with 18 counts of armed robbery or attempted armed robbery, Caleb McClelland pleaded guilty to six of the robbery counts (Pen. Code, § 211) and admitted he used a pistol (Pen.. Code, § 12022.5) during all six offenses. He was sentenced to prison and appeals, claiming his motion to suppress evidence (Pen. Code, § 1538.5) was erroneously denied and the calculation of his sentence was incorrect.

After arresting McClelland for a string of armed robberies, police officers went to the apartment he shared with Percy Smith. The officers asked Smith's permission to search the home and he gave it. They then asked him where McClelland kept his belongings. Smith directed them to a coat closet in the front room and a linen closet that opened from the hall off the living room. Smith told the officers he did not keep his things in the linen closet, but his nephew Wesley did. The officers searched the closet, finding a sweatshirt which was connected with one of the robbery counts dismissed in the plea bargain.

Smith had been renting the apartment for a number of years before the search and his nephews Wesley and Rodney lived there with him. At the time of the search, Wesley was away at boot camp and was scheduled to return in two to three weeks. While he was away, his possessions were stored in the linen closet, and Rodney was in charge of keeping an eye on them. McClelland had been living at the apartment next door but when he and the renter there had an argument, Smith invited McClelland to stay at his place temporarily until Wesley returned. Smith asked McClelland to

\*Before Brown (Gerald), P. J., Cologne, J., and Zumwalt, J.†

---

†Assigned by the Chairperson of the Judicial Council.

help out with the rent he and Rodney were paying, but McClelland never gave him any money. In fact, Smith had told McClelland to get out if he was not going to help pay the rent. Both while McClelland was present in the apartment and when he was away, Smith's niece's children would go into the closet and remove tennis balls Wesley had left there.

■ McClelland claims Smith lacked apparent authority to consent to the search of the closet and the seizure of the sweatshirt was illegal. The crucial question here is were the officers reasonable in believing Smith had "some possessory right or control" over the closet (*People* v. *Engel* (1980) 105 Cal.App.3d 489, 499 [164 Cal.Rptr. 454]). This is based in turn on "'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection . . . and . . . the others [inhabitants] have assumed the risk that one of their number might permit the common area to be searched.'" (*In re Scott K.* (1979) 24 Cal.3d 395, 404 [155 Cal.Rptr. 671, 595 P.2d 105], quoting *U.S.* v. *Matlock* (1974) 415 U.S. 164, 171, fn. 7 [39 L.Ed.2d 242, 250, 94 S.Ct. 988], italics added.)

The officers could reasonably conclude the closet was a *common area* as evidenced from its access from the common hallway and Smith's nephews being permitted use of it. Although Smith was not using it to store his *own items* at that time, he was in charge of the apartment and had control over the closet. McClelland was a temporary guest with one foot out the door due to his failure to help with the rent. The closet's accessibility from the common hallway rendered any expectation of privacy McClelland might have had in the closet unreasonable. The consent was valid, and the trial court properly denied the 1538.5 motion.

■ McClelland was given the middle term sentence of three years on the principal robbery count and consecutive terms of one year each for three of the other robberies. He was also given a total of four more years for gun use on four of the crimes. The total sentence was for 10 years. He claims this violates the rule of Penal Code section 1170.1, subdivision (f).

Section 1170.1, subdivision (f) provides in pertinent part: "The term of imprisonment shall not exceed twice the number of years imposed . . . as the base term . . . *unless* the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of Section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (b) of this section, or an enhancement is imposed pursuant to Sections 12022, 12022.5, 12022.6 or 12022.7 . . . ."

Among the "violent felonies" listed in Penal Code section 667.5, subdivision (c)(8) is "any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5."

McClelland claims because section 1170.1, subdivision (f) repeats itself by referring to Penal Code 12022.5 crimes twice, it creates *an ambiguity* which must be · cleared by not applying the section's exception to the twice-the-base-sentence rule. In *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal.Rptr. 630, 556 P.2d 1081], the California Supreme Court defined an ambiguity as words "susceptible of two reasonable constructions," and held when an ambiguity lies, the defendant must be given the benefit of the construction favorable to him. Although section 1170.1, subdivision (f) is *redundant,* it is not *ambiguous*—if any meaning is conveyed by the redundancy, it is the Legislature's desire an exception be made to the twice-the-base-term rule for section 12022.5 crimes.

Before it was amended in 1977, section 1170.1, subdivision (f) did not include section 12022.5 crimes, therefore there was no redundancy. The Supreme Court's 1979 ruling in *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], eliminated section 12022.5 crimes from the list of section 667.5 violent felonies for purposes of imposing consecutive sentences under section 1170.1, subdivision (a). This may have persuaded the Legislature to retain section 1170.1, subdivision (f)'s reference to section 12022.5 crimes because without it, a logical extension of *Harvey* might have been section 12022.5 crimes were not among the exceptions to the twice-the-base-sentence rule.

McClelland points to the Legislature's post-*Harvey* amendment to section 1170.1, subdivision (a) in which it was made clear 12022.5 crimes are violent felonies under section 667.5, subdivision (c). He says because the Legislature did not expressly apply this clarification to 1170.1, subdivision (f), it must have intended to eliminate the exception for section 12022.5 crimes. However, the amendment was made in response to *Harvey,* which dealt only with section 1170.1, subdivision *(a)* and not with subdivision *(f).* (Italics added.) If the Legislature had expressly applied the amendment to subdivision (f) also, it would have anticipated a problem that did not then exist. Moreover, the clear language of subdivision (f) creating an exception for section 12022.5 crimes remained in the law, even if all references to section 667.5, subdivision (c) were omitted.

In *People* v. *Wright* (1979) 92 Cal.App.3d 811 [154 Cal.Rptr. 926], the court found the language of Penal Code section 1170.1, subdivision (f)

to be clear and unambiguous. Another court in *People* v. *Sequeria* (1981) 126 Cal.App.3d 1 [179 Cal.Rptr. 249], disagreed, but our reading of the section persuades us *Wright* is correct.[1]

McClelland urges in the alternative the true meaning of section 1170.1, subdivision (f) dictates he be given a total sentence of only twice the base term plus two years for the enhancement on the principal term, or eight years. The same argument was advanced in *People* v. *Wright, supra,* 92 Cal.App.3d 811, where it was rejected, and in *People* v. *Sequeria, supra,* 126 Cal.App.3d 1, where it was accepted. A simple reading of the statute resolves the conflict on the *Wright* side. The *Sequeria* court based its contrived reading of the statute on the faulty assumption, surely "the Legislature [did not mean] to equate a single enhancement with convictions of a violent felony . . ." (126 Cal.App.3d at p. 21) yet that is precisely what the Legislature did when it amended section 1170.1, subdivision (a) to expressly include section 12022.5 crimes, thus equating them with specified violent felonies. McClelland was correctly sentenced.

Judgment affirmed.

Appellant's petition for a hearing by the Supreme Court was denied December 1, 1982. Newman, J., did not participate therein.

---

[1]It is also interesting to note section 667.5, subdivision (c) has a redundancy on its face. After designating murder, mayhem, rape, sodomy, oral copulation, lewd acts and capital crimes as "violent crimes" it adds to the list "*any*" section 12022.5 crime. Surely there are many murders, rapes, etc., which are also section 12022.5 offenses. To follow McClelland's logic this redundancy means all the specified crimes committed with the use of a gun cannot be considered section 667.5, subdivision (c) offenses, indeed an absurd result.