[No. F039752. Fifth Dist. July 11, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY LEWIS SMITH, Defendant and Appellant.

COUNSEL

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Jeffrey D. Firestone and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.**—After a court trial, appellant Stanley Lewis Smith was convicted of the first degree murder of his wife, Alice. The court also found that during the commission of the crime appellant used a deadly weapon—a ligature.[1] Appellant was sentenced to a term of 25 years to life, plus a one-year consecutive term for the enhancement. After the start of the court trial, defendant was found mentally incompetent, causing the suspension of the criminal proceedings, which later resumed with the consent of appellant and his counsel when his competency had been restored. Appellant primarily contends on appeal that his incompetency necessarily predated by at least a few days the suspension of the criminal proceedings; accordingly, argues appellant, his waiver of jury trial was not competently made and he was not competent during a portion of the presentation of evidence, causing structural, constitutional error. We affirm.

## PROCEDURAL BACKGROUND

On April 17, 2001, after a series of motions in limine, the trial court took a waiver of appellant's right to jury trial and proceeded with a court trial[2] On April 18, immediately after the noon recess, defense counsel stated that

---

[1] The facts of the offense are not relevant to the issues raised on appeal. It is sufficient to state that appellant murdered his wife of 32 years in their home during a sexual bondage game while both were intoxicated. The game was recorded and the trial court heard the tape during trial.

[2] Before taking the waiver, the trial court stated there has been "some discussions about a possibility of a jury waiver." Defense counsel responded: "Yes, Your Honor. We had some discussions in chambers about the possibility of waiving a jury. I discussed it with my client in the last 10 or 15 minutes raising the pros and the cons from my point of view, giving him my opinion about what might ensue, and Mr. Smith would prefer a court trial rather than a jury trial. He'd be willing [to] waive his right to a jury." The court then proceeded to take the waiver, first informing appellant of the nature of the right, and comparing a jury trial to a court trial. The court asked if appellant understood the difference between the two. Appellant answered, "Yes, Sir." The court then asked "Do you give up your right to a jury trial and agree that the court can hear this matter by court trial or bench trial?" Appellant answered again, "Yes, Sir." After being given some time to consider her position, the prosecutor stated that the

"[s]ome time before we broke, I spoke with [appellant] and he—what he said to me was totally—it didn't make any sense to me. It seemed like he was very confused." Counsel explained that appellant was on medication to deal with a "major mental disorder" and had not received his first dose in the jail that morning, but had been given the second at noon. Counsel stated that as a result, "He's feeling a lot better and he seems more coherent." The court took steps to ensure that medication would be given in the morning before trial began and instructed counsel to check with appellant each morning to make sure the medication had been given. Trial continued without further discussion of appellant's competency.

On April 19, the morning session and most of the afternoon session continued without incident. Several witnesses testified. Toward the end of the afternoon session, defense counsel told the court he had "a very brief conversation with [his] client" and that appellant seemed confused as to how he got to court. The court noted it was late in the day and stated it suspected appellant's condition was "an imbalance of medication occurring late in the day." Defense counsel commented that appellant was "not totally out of it." Both defense counsel and the prosecution noted for the record that appellant had been lucid earlier. The court halted proceedings and ordered an evaluation by the jail staff over the weekend with particular attention to the medication issue.

Jail staff opined that appellant was "mentally fragile" and that the stress of the court proceedings had been and would continue to be overwhelming so that appellant would be "unable to rationally assist his counsel in his defense due to his psychosis and his continued decompensation." On Tuesday, April 24, the court stated it had a doubt as to appellant's "current competency to stand trial" and ordered a competency hearing pursuant to Penal Code[3] section 1368.

At the competency hearing on May 4, the court reviewed the reports of four doctors,[4] all of whom opined that appellant was incompetent. The court

People would be willing to waive a jury trial. The court then stated, "All right. We'll show a jury waiver."

[3] All further references are to the Penal Code unless otherwise noted.

[4] One of the reports was from Dr. Estner, who evaluated appellant on Friday, April 20. Based on this evaluation Dr. Estner opined appellant was not able to understand the proceedings and was not able to assist counsel at trial. Another, from Dr. Howsepian, who evaluated appellant several days after proceedings were suspended, stated appellant appeared to possess the capacity to know and understand the nature of the charges and to cooperate with counsel but that "in virtue of an episodic profoundly cognitively impairing anxiety disorder, it does NOT appear that, in the absence of proper psychiatric treatment, [appellant] would be able to cooperate with counsel in a rational manner during his trial." A third psychiatrist, Dr. Dansereau, stated he had been treating appellant and that he had been "doing fairly well until

ordered that proceedings be suspended and committed appellant to Atascadero State Hospital for treatment. The court also stated that rather than declare a mistrial, the case would remained in a "continued status" until the first report was received from Atascadero.

On September 28, 2001, proceedings resumed after a certificate of restoration of competency had been issued pursuant to section 1372. Defense counsel stated it was appellant's "desire that we continue on with a court trial." The court, after checking that counsel had transcripts of the previous days of the trial, and noting the concurrence of all counsel in proceeding, asked appellant, "You do not want to make any motion for a mistrial based on your decompensation possibly that last day?" Appellant answered "No." There was no formal waiver of any rights. There was no discussion or finding by the trial court on the issue of appellant's competency during the first few days of trial. Thereafter, the trial resumed.

## DISCUSSION

*Mental Competence*

■ "Trial of an incompetent defendant violates the due process clause of the Fourteenth Amendment to the United States Constitution. (*Godinez v. Moran* (1993) 509 U.S. 389, 396 [125 L.Ed.2d 321, 113 S.Ct. 2680]) and article I, section 15 of the California Constitution." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281 [91 Cal.Rptr.2d 211, 989 P.2d 645].) In California, these protections are implemented by statute. (*Ibid.*) Section 1367, subdivision (a), provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (See also *Cooper v. Oklahoma* (1996) 517 U.S. 348, 354 [134 L.Ed.2d 498, 116 S.Ct. 1373] [under federal Constitution, defendant may not be tried unless he has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him].)

To implement these guarantees in California, section 1368 provides that if "a doubt arises in the mind of the judge as to the mental competence of the

---

recently, when he began to decompensate and started showing signs and symptoms of psychosis."

defendant," the court shall inquire of defense counsel as to the status of the defendant and, if counsel believes that the defendant may be incompetent, the court "shall order" a hearing to determine defendant's competency. (§ 1368, subds. (a), (b).) ▮ In addition, if a defendant comes forward "with *substantial evidence* of incompetence to stand trial, due process *requires* that a full competence hearing be held as a matter of right." (*People v. Welch* (1999) 20 Cal.4th 701, 738 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

▮ All proceedings are suspended until competency is determined. (§ 1368, subd. (c).) If the defendant is found competent, proceedings are resumed. (§ 1370, subd. (a)(1)(A).) If the defendant is found incompetent, proceedings remain suspended until the defendant regains competency. The defendant is sent for evaluation and treatment. (§ 1370, subd. (a)(1)(B).) Once competence is restored, a certificate of restoration of competence is filed with the court and the defendant is "returned to the committing court" for "further proceedings." (§§ 1370, subd. (a)(1)(C), 1372.)

*Waiver of Right to Jury*

▮ A criminal defendant may waive fundamental rights, including the right to a jury trial. (*People v. Collins* (2001) 26 Cal.4th 297, 305 [109 Cal.Rptr.2d 836, 27 P.3d 726] [defendant may waive fundamental constitutional right to jury trial].) A defendant's waiver of the right to jury trial, as with other fundamental rights, may be accepted by the court only if knowing and intelligent—made with a full awareness of the nature of the right being waived and the consequences of the waiver. In addition, the waiver must be voluntary. (*Colorado v. Spring* (1987) 479 U.S. 564, 573 [93 L.Ed.2d 954, 107 S.Ct. 851]; *New York v. Hill* (2000) 528 U.S. 110, 114–118 [145 L.Ed.2d 560, 120 S.Ct. 659] [all rights, including fundamental rights, are waivable].) The waiver must be taken from the defendant personally. (*People v. Montoya* (2001) 86 Cal.App.4th 825, 829 [103 Cal.Rptr.2d 579].)

"In determining whether there has been an effective waiver of a jury trial in favor of a court trial, the cases do not require a specific formula or extensive questioning beyond assuring that the waiver is personal, voluntary and intelligent. [Citations.]" (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 344 [125 Cal.Rptr. 9] [appellant personally stated that he did not want a jury and appellant's counsel told the judge that he had spent time discussing the matter with appellant].)

▮ Waiver is ordinarily a question of fact. The burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the matter to speculation, and doubtful cases will be resolved against a

waiver. (See *People v. McArthur* (1992) 11 Cal.App.4th 619, 627 [14 Cal.Rptr.2d 203].) A defendant cannot waive a fundamental right while incompetent. (See *Fay v. Noia* (1963) 372 U.S. 391, 472 [9 L.Ed.2d 837, 83 S.Ct. 822] Harlan, J. (dis. opn. of) [an incompetent person cannot make an intelligent waiver], overruled on other grounds, *Wainwright v. Sykes* (1977) 433 U.S. 72 [53 L.Ed.2d 594, 97 S.Ct. 2497].)

Appellant contends the initial jury waiver is invalid because his period of incompetence came so soon after the waiver was taken that the prosecution cannot prove a valid waiver. (*Brewer v. Williams* (1977) 430 U.S. 387, 404 [51 L.Ed.2d 424, 97 S.Ct. 1232] [prosecution has burden of establishing valid waiver of fundamental right].) Appellant claims the "close timing between the purported waiver and symptoms of obvious confusion suggests that appellant had already become mentally incompetent before he waived his right to a jury trial."

No authority supports appellant's argument that the temporal relationship between the waiver and the first evidentiary sign of incompetence alone is sufficient to invalidate an otherwise valid waiver. On April 18, counsel advised the court after lunch that appellant had not received his medication in the morning and had been confused when counsel spoke with him in the morning session, *but* that during the noon recess appellant had received his medication and seemed more coherent. No further reference to any confusion or incompetency is recorded on that date.

On April 19, late in the afternoon session, counsel again notified the court that appellant seemed to be confused and that he was concerned about appellant's mental status. He said that on both days, "yesterday [April 18] and today [April 19]," appellant had asked questions that made no sense. Both defense counsel and the prosecutor noted, however, that appellant had been lucid at times earlier in the day and that appellant was not "totally out of it." Counsel stated he thought the confusion was because appellant had failed to receive his medication on April 18, but the confusion on April 19 was of the same nature. There is no representation that appellant had been confused on April 17. This is especially noteworthy because it was during conversations with appellant on both April 18 and 19 that defense counsel noticed the confusion. When the jury waiver was accepted by the court on April 17, defense counsel informed the court that he had discussed the "pros and cons" of the waiver with appellant for "10 or 15 minutes" before going on the record. We may infer from this representation that counsel was able to converse with appellant in a rational way and that there were no signs that appellant was confused or unable to understand the choice he was making.

There is nothing in the reports of the various physicians evaluating appellant that suggests his mental status had decompensated prior to April

18 when appellant's confusion was first brought to the trial court's attention. There is no evidence appellant had any problems understanding the proceedings or participating on April 17, and any claim that appellant's incompetency began on that date is simply speculation. ■ There was evidence appellant suffered from a mental illness and was on psychotropic medication, but the mere presence of a mental illness does not mean appellant was unable to understand the proceedings or assist in his own defense. (*People v. Laudermilk* (1967) 67 Cal.2d 272, 285 [61 Cal.Rptr. 644, 431 P.2d 228].) ■ The prosecution may have the burden of establishing a valid waiver of a fundamental right, but a defendant is presumed competent "unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f)); *People v. Sakarias* (2000) 22 Cal.4th 596, 617 [94 Cal.Rptr.2d 17, 995 P.2d 152]; see also *Medina v. California* (1992) 505 U.S. 437, 446 [120 L.Ed.2d 353, 112 S.Ct. 2572] [statute providing that defendants are presumed to be competent does not violate defendant's procedural due process rights].)

The trial court, when taking the waiver from appellant, explained the differences between the two types of trials, and asked appellant whether he understood the differences and whether he wanted nonetheless to waive his right to a jury trial. Appellant answered in the affirmative, and there is nothing in the record to suggest appellant did not understand the questions asked or the explanation given. Although the court did not make an express finding that the waiver was knowing and voluntary, there is no requirement that it do so. The record establishes a knowing and intelligent waiver. (See *People v. Castaneda, supra,* 52 Cal.App.3d at p. 345 [waiver valid where appellant personally stated that he did not want a jury and appellant's counsel told the judge that he had spent time discussing the matter with appellant].)

*Resumption of Trial After Restoration of Competency*

Appellant contends that the trial court erred in resuming trial after his competency was restored. He claims the trial court was required to declare a mistrial and assign the matter for a new trial. This issue is novel. Appellant also argues that because a defendant cannot waive the requirement that he be competent during trial, his agreement to proceed does not bar his claim on appeal. ■ Although this is a true statement of the law—whether a person is competent to stand trial is a jurisdictional question and cannot be waived by the defendant or counsel (*People v. Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942])—the issue presented to us is more complex.

We turn first to the statute. Section 1368 provides that if a court issues an order setting a hearing to determine a defendant's mental competency, "all

proceedings in the criminal prosecution shall be suspended until the question of the present mental competency of the defendant has been determined." The section further provides, "[i]f a jury has been impaneled and sworn to try the defendant, the jury shall be discharged only if it appears to the court that undue hardship to the jurors would result if the jury is retained on call. ▆ If the defendant is declared mentally incompetent, the jury shall be discharged." (§ 1368, subd. (c).) But there is no similar direction when a defendant is declared incompetent during a *court trial*.[5] ▆ After restoration of mental competency, the statute directs that the defendant be "returned to court" and proceedings are to be "resumed." (§ 1370, subd. (a)(1)(C) and § 1372 generally.) The statute does not *end* criminal proceedings, it merely *suspends* them. (§ 1370; *Booth v. Superior Court* (1997) 57 Cal.App.4th 91, 100 [66 Cal.Rptr.2d 758] [if and when competence is restored, criminal proceedings are resumed—not begun anew].) To "resume" is "to take up or begin again following interruption." (Webster's New College Dict. (1995) p. 946.) ▆ Courts are to give statutory words their plain or literal meaning. (*People v. Allen* (1999) 21 Cal.4th 846, 859 [89 Cal.Rptr.2d 279, 984 P.2d 486].)

We can find no authority requiring that a mistrial be declared as a matter of law upon restoration of competency. There may be times when it is necessary to begin anew—due to the unavailabilty of the original trial judge, a lengthy passage of time or other court administrative considerations. (See *Reimer v. Firpo* (1949) 94 Cal.App.2d 798, 801 [212 P.2d 23] [mistrial in nonjury trial, term of trial judge ended after order for judgment but before findings were signed]; *McAllen v. Souza* (1937) 24 Cal.App.2d 247, 251 [74 P.2d 853] [mistrial after death of judge before entry of final judgment].) However, in this case, the time of incompetency was relatively short and the trial court was available to resume proceedings after restoration of competency. Unless we find a legal impediment to its decision, we will not disturb its exercise of discretion on appeal. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203] [courts have inherent authority to manage their calendars and control proceedings before them].) The statute itself offers no such impediment.

The origin of the legal impediment proffered by appellant is the constitutional guarantee of due process. He claims simply continuing with trial violated due process because he was incompetent during the earlier portions of the proceedings. He argues this fundamental flaw in his trial could not be waived and therefore his conviction must be reversed. His argument, to be

---

[5] Nor may we add such direction to the statute absent a constitutional requirement that we do so. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 304 [53 Cal.Rptr.2d 825][courts may not second-guess legislative policy decisions]; *People v. Campbell* (1902) 138 Cal. 11, 15 [70 P. 918] [courts must not add provisions to statutes].)

successful, requires a finding that he was incompetent during some portion of the first three days of trial. We have already concluded there is no evidence to support a finding that he was incompetent on April 17. We reach the same result for April 18 and 19.

 Incompetence is established under the statute by a preponderance of the evidence. (§ 1369, subd. (f).) As we have already stated, it is appellant's burden to show incompetence. (*People v. Sakarias, supra,* 22 Cal.4th at p. 617; see also *Booth v. Superior Court, supra,* 57 Cal.App.4th 91 [defendant presumed competent where no record evidence that he was incompetent at preliminary hearing, even though subsequently found incompetent]; contra, *Miller v. Superior Court* (1978) 81 Cal.App.3d 132 [146 Cal.Rptr. 253] [without discussion, court finds after competence restored that defendant was incompetent during prior proceedings].) The trial court did not express a doubt as to appellant's competence until April 24, after it considered the assessments of the jail staff. Prior to receiving the assessment, the only evidence of appellant's purported incompetence was defense counsel's statements. These are insufficient to establish incompetence as a matter of law and the trial court made no finding reviewable under an abuse of discretion standard. (*People v. Welch, supra,* 20 Cal.4th at p. 738; *People v. Dudley* (1978) 81 Cal.App.3d 866, 872 [146 Cal.Rptr. 767]; see also *People v. Medina* (1990) 51 Cal.3d 870 [274 Cal.Rptr. 849, 799 P.2d 1282], affd. *subnom. Medina v. California, supra,* 505 U.S. 437 [presumption of competence, which remains despite introduction of some evidence of incompetence does not violate due process of law].)

At the May 4 competency hearing, the trial court also made no finding that appellant had been incompetent on April 18 or 19—the finding was one of *present* incompetence. Appellant has made no contention that the trial court abused its discretion by failing to suspend proceedings earlier than it did pursuant to section 1368. (*People v. Welch, supra,* 20 Cal.4th at p. 740 [when evidence casting doubt on a defendant's incompetence is less than substantial, trial court's failure to order hearing pursuant to § 1368 will not be disturbed unless doubt appears as a matter of law or there is an abuse of discretion].)

When proceedings resumed, and appellant had been restored to competence, no contention was made that appellant had been unable to assist with or understand the earlier proceedings and no further evidence was introduced or record made on the issue. The court's question to appellant invited raising the issue—"You do not want to make any motion for a mistrial based on your decompensation *possibly* that last day?" (Italics added.) Had appellant wished to establish he was incompetent during earlier proceedings, this was the time to do so. It bears repeating: we must presume appellant was competent in the absence of any showing that he was not. (§ 1369, subd. (f).)

There is no denying that the timeframe between proceedings occurring when a defendant is presumed competent and the finding of doubt as to competency can be a very brief time period. But proximity of time alone is not determinative; our finding rests on a failure of proof. The statutory procedure establishes a discernible point at which evidence of incompetence is sufficient to halt proceedings and renders further proceedings constitutionally invalid. Under the statute, the question of incompetency arises the moment the court expresses a doubt as to a defendant's competency (§ 1368, subd. (a)) and is based on the consideration of all the relevant circumstances, including the behavior of the defendant and the comments of counsel.[6] (*People v. Howard* (1992) 1 Cal.4th 1132, 1164 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) In the absence of evidence sufficient to find incompetency as a matter of law, or a retroactive finding of incompetency by the trial court, we cannot find the later incompetency finding under section 1369 reaches back to some unknown and unidentified point in earlier proceedings. Doing so would create an unmanageable and unjustified quagmire for appellate and trial courts alike.

Here, appellant contends the entire first three days of trial are infected as a result of his incompetency. On two of those three days there was *some evidence* to support his contention of incompetence, but the evidence does not rise to a level where we can say his incompetency is established as a matter of law. (*People v. Welch, supra,* 20 Cal.4th 701; see also *Booth v. Superior Court, supra,* 57 Cal.App.4th at p. 98 [distinguishing "an issue of present competence" from a "doubt" under § 1368].) In other cases the time of possible infection could well be longer and extend back beyond the start of trial to pretrial events, encompassing a preliminary hearing, a pretrial motion to suppress, or motions for continuances where a waiver of time is given. The statute and general rules of criminal procedure[7] place the burden on the defendant to come forward after restoration of competency with sufficient evidence to show which, if any, parts of the prior proceedings were infected by his subsequent declaration of incompetence.

---

[6] We note that the comments of counsel were that he had spoken with appellant, who did not make any sense and appeared confused as to how he got to court. Counsel did not say appellant had been unable to assist with the defense or relate appellant's confusion to matters relating to the nature of the proceedings. Yet, these are the standards for determining whether a defendant is incompetent. (*Cooper v. Oklahoma, supra,* 517 U.S. at p. 354.) Mere bizarre statements or actions are generally insufficient to constitute substantial evidence raising a doubt as to the defendant's competency. (*People v. Burney* (1981) 115 Cal.App.3d 497, 503 [171 Cal.Rptr. 329]; *Booth v. Superior Court, supra,* 57 Cal.App.4th at p. 99 [it is the judge, not defense counsel who determines the presence or absence of a section 1368 "doubt"].)

[7] There appear to be several possible vehicles for seeking dismissal of criminal proceedings when a defendant feels it is necessary to begin "anew" after competency is restored. (*People v. Duncan* (2000) 78 Cal.App.4th 765 [93 Cal.Rptr.2d 173] (*Duncan*) [§ 995 motion or nonstatutory motion to dismiss]; 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 714, p. 1013 [ § 1385, in the interests of justice].)

Although we find no case law directly on point, we do find support in *Duncan, supra,* 78 Cal.App.4th 765. In *Duncan,* the defendant was held to answer after a preliminary hearing. The trial was called five times, but was continued each time. On the sixth call, the public defender expressed a doubt as to the defendant's competency. Ultimately the defendant was found incompetent and committed. Upon restoration of competency, Duncan moved to dismiss the charges against him on the ground that he was incompetent during his preliminary hearing. He presented evidence that his incompetency began before and extended through the preliminary hearing. The trial court considered the evidence and found Duncan was incompetent during the preliminary hearing and dismissed the charges on due process grounds. The trial court found that Duncan had met his burden of overcoming the statutory presumption that he was competent during the preliminary hearing. (*Id.* at p. 769.) The Court of Appeal affirmed the trial court's finding and held the use of the nonstatutory motion to dismiss was an appropriate procedural vehicle for challenging the constitutionality of the preliminary hearing on the grounds that Duncan was incompetent. (*Id.* at. pp. 772–773.)

Section 1368 is a legislative determination that the trial court is the appropriate judicial body for determining a defendant's competence. Unless the trial court has been offered evidence on these issues relative to earlier proceedings upon restoration of competency, there is nothing for the appellate court to review. As the court in *Duncan* noted, "[The defendant] may only be said to have been deprived of a substantial right if the trial court properly found him to have been incompetent at the time of the preliminary hearing. We thus review the evidence to see if it supports the trial court's finding." (*Duncan, supra,* 78 Cal.App.4th at p. 773.)

Appellant has failed to show he was incompetent during any part of the proceedings prior to April 24, when the court expressed its doubt as to appellant's competency. We cannot conclude the trial court erred in resuming proceedings after restoration of competency.[8]

---

[8] Having so concluded, we need not and do not address the remaining issues raised by appellant, whether a defendant can waive upon restoration of competency the right to be tried while competent and, if so, what type of waiver must appear on the record.

## DISPOSITION

The judgment is affirmed.

Levy, J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.