Filed 3/13/23  P. v. Leyva CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE ARMANDO LEYVA,<br><br>    Defendant and Appellant. | 2d Crim. No. B320760<br>(Super. Ct. No. 2021005005)<br>(Ventura County) |

Jorge Armando Leyva appeals from the judgment after the trial court sentenced him to three years in state prison for arson of an inhabited structure.  He contends: (1) his waiver of jury trial was invalid, and (2) the trial court erred in ordering restitution to the Oxnard Fire Department.  Because the jury waiver here was invalid, we reverse.

FACTUAL AND PROCEDURAL HISTORY

Leyva was charged with arson of an inhabited structure

(the Oxnard homeless shelter) (Pen. Code, § 451, subd. (b))[1] (count 1) and, for another incident, arson of property (§ 451, subd. (d)) (count 2). The court found Leyva incompetent to stand trial (§ 1370, subd. (a)(1)(B)). Five months later, based on evaluations of two doctors, the court found Leyva competent (§ 1370, subd. (a)(1)(A)).

Five months after the competency finding, defense counsel told the court, "I discussed this matter with Mr. Leyva and he's going to waive jury at this time." The court advised Leyva that "if you need to talk to [defense counsel], you can." No written waiver form was used. Instead, the following colloquy occurred:

"[Court]: All right. Mr. Leyva, you do have a right to a jury trial in this case. Are you willing to waive your right to a jury trial and instead of having your case decided by a jury of 12 individuals, you agree to have a judge decide and have a Court trial instead?

"[Leyva]: I'd rather have a judge.

"[Court]: All right. And so that's a yes, correct?

"[Leyva]: Yes.

"[Court]: You'd rather have a judge?

"[Leyva]: Yes.

"[Court]: And do you also understand that you have certain Sixth Amendment rights to confront and cross-examine witnesses where a jury would be the one determining credibility and weight of evidence, but instead, by waiving your right to a jury trial, that will be a judge making that decision? Do you understand that?

"[Leyva]: Yes.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

"[Court]: All right. And you also understand if you were to have a jury trial, you'd have a Fifth Amendment right to remain silent and a jury would be told they couldn't hold that against you and they could not consider that in deliberating and weighing the evidence? You'd still have that same right, but it wouldn't be a jury; it would be a judge? Do you understand that?

"[Leyva]: Can I ask a question?

"[Defense counsel]: Why don't you ask me.

"[Court]: Ask [defense counsel], please.

"[Defense counsel]: Sorry, your Honor. Could the Court repeat its last question?

"[Court]: Sure. You understand that you'd have a Fifth Amendment right where a jury would be told they could not hold that against you and they couldn't consider that?

"[Leyva]: Yes, sir.

"[Court]: And you're giving up that right as far as having a jury consider that, but you'd still have a Fifth Amendment right; it would just be a judge. Do you understand that?

"[Leyva]: Yes, sir.

"[Court]: All right. I'll show that the defendant has knowingly, intelligently and understandingly waived his right to a jury trial and instead is electing a Court trial to have a judicial officer make those determinations."

The trial court found Leyva guilty of count 1 and not guilty of count 2. It sentenced Leyva to the low term of three years in state prison. Without objection, the court ordered Leyva to pay restitution of $921.38 to the Oxnard Fire Department.

## DISCUSSION

### *Jury waiver*

Leyva contends his waiver of jury trial was invalid. We

3

agree.

The federal and state constitutions guarantee the right to trial by jury.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.)  "The denial of a defendant's constitutional right to a jury trial constitutes structural error that requires reversal regardless of the strength of the evidence supporting the conviction.  [Citations.]"  (*People v. Jones* (2018) 26 Cal.App.5th 420, 429.)

A waiver of jury trial must be " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " ' " and " 'voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' [Citation.]"  (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).)  Trial judges need not follow a rigid formula or use any particular words to ensure that a jury waiver is knowing and intelligent.  (*Id.* at pp. 169-170.)

"The voluntariness of a waiver is a question of law which appellate courts review de novo."  (*People v. Panizzon* (1996) 13 Cal.4th 68, 80 [waiver of appeal]; *People v. Morelos* (2022) 13 Cal.5th 722, 735 [*Faretta* waiver].)  A jury waiver is valid only " ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' "  (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.) (*Daniels)*.)  "The burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the matter to speculation, and doubtful cases will be resolved against a waiver."  (*People v. Smith* (2003) 110 Cal.App.4th 492, 500-501.)

In 2017, our Supreme Court provided guidance for jury waivers in criminal cases.  "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury

4

trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.)

The trial court failed to heed that guidance here. Only one of the four advisements was fully given, i.e., that a judge alone would decide the case. The court advised that a jury consists of "12 individuals" but "the record does not show whether [Leyva] understood that a jury is comprised of individuals from the community." (*People v. Jones*, *supra*, 26 Cal.App.5th at p. 423.) " ' "[T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." ' [Citation.]" (*Id.* at p. 432.)

The court also did not advise Leyva of two significant rights listed in *Sivongxxay*: that he could participate in jury selection through his attorney, and that the jury verdict must be unanimous. Counsel's participation in jury selection is part of providing an effective defense. (*People v. Locklar* (1978) 84 Cal.App.3d 224, 229.) The defendant has a right to participate in jury selection by consulting with counsel. (See *People v. Kocontes* (2022) 86 Cal.App.5th 787, 873-875 [right to consult counsel during trial]; *People v. Wall* (2017) 3 Cal.5th 1048, 1059 [jury selection a " 'critical stage' " of trial, defendant has " 'constitutional right to be present' "].) And the right to a

5

unanimous verdict is an essential element of the right to jury trial. (*Ramos v. Louisiana* (2020) ___ U.S. ___, ___ [140 S.Ct. 1390, 1396-1397, 206 L.Ed.2d 583]; *People v. Traugott* (2010) 184 Cal.App.4th 492, 500.) While the failure to advise of either of these rights does not automatically invalidate a jury waiver, their absence combined with the lack of a "robust oral colloquy" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169) shows the waiver was not knowing and intelligent based on the totality of the circumstances.

Sivongxxay also recommended that trial courts take "additional steps," for example, "by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 169-170.) Defense counsel here advised the court that he "discussed this matter with Mr. Leyva," but the court did not inquire whether counsel explained the differences between a jury trial and a court trial, or whether Leyva understood. (Cf. *People v. Weaver* (2012) 53 Cal.4th 1056, 1070-1071 [in two-hour discussion, attorney "fully explained" difference between jury trial and court trial].) Leyva attempted to ask a question of the court but was told to ask his attorney. The record does not reflect that Leyva and his counsel took a break from the proceedings to discuss his question, much less that Leyva received an answer to his question. The court should have directed Leyva and his counsel to take a break from the proceedings to address Leyva's question.

A " 'defendant's prior experience with the criminal justice

system' is . . . 'relevant to the question of whether he knowingly waived constitutional rights.' " (*People v. Mosby* (2004) 33 Cal.4th 353, 365.) At trial, and after Leyva had purportedly waived a jury trial, Leyva's criminal history summary ("rap sheet") and the court dockets from two previous felony cases were admitted as relevant to aggravating circumstances. (Cal. Rules of Court, rule 4.421(b)(2).) Although he had several prior convictions, the record does not include the specific advisements or waivers given to Leyva in those cases. The docket from a 2018 felony jury trial showed Leyva was present when his attorney participated in jury selection. But we do not assume that Leyva considered those proceedings when he waived jury here more than three and half years later. This case is unlike *Mosby*, where the defendant was aware of his trial rights when he admitted a prior conviction because he "had *just* undergone a jury trial" on the substantive offense. (*Mosby*, at p. 364.) *Mosby* relied on *United States v. Dawson* (9th Cir. 1999) 193 F.3d 1107, 1110-1111, where an incomplete advisement of rights was preceded less than two months earlier by a full advisement in another case. (See *Daniels*, *supra*, 3 Cal.5th at p. 1002 (lead opn. of Cuéllar, J.) ["only an attenuated connection, at best" with oral advice for guilty pleas a decade earlier].)

Other circumstances support our conclusion that the prosecution has not established a valid waiver. No written waiver form was used. While a written waiver is not required, it can be helpful to establish the adequacy of a jury waiver. (See *People v. Weaver*, *supra*, 53 Cal.4th at p. 1070.) Similarly, while the absence of an express finding of voluntariness here does not automatically invalidate a jury waiver (*People v. Smith*, *supra*, 110 Cal.App.4th at p. 502), the record does not include a factual

basis to establish voluntariness such as an inquiry regarding threats or promises made in exchange for waiving jury. (See *People v. Morelos*, *supra*, 13 Cal.5th at p. 754; *Daniels*, *supra*, 3 Cal.5th at p. 988 (lead opn. of Cuéllar, J.).)

In *People v. Blancett* (2017) 15 Cal.App.5th 1200 (*Blancett*), we reversed an MDO commitment order on the ground that Blancett's jury trial waiver was not knowing and intelligent. As in *Blancett*, the trial court here failed to "explain the significant attributes or mechanics of a jury trial." (*Id*. at p. 1206.) Nor did the trial court inquire whether the defendant "had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether [the defendant] had any questions about the waiver." (*Ibid*.) And, like *Blancett*, "we have no record of the advisements [Leyva] received" in other criminal matters. (*Ibid*.)

"Crowded dockets, constrained budgets, and overwhelming caseloads for public attorneys create undeniable pressure to speed criminal cases along" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 216), but "the trial court is not merely a passive receiver of an attempted [jury] waiver. . . . The court's obligation 'to advise [the] defendant of his right to [a] jury trial' and to 'determine impartially whether [the] defendant's waiver of jury trial was knowing, intelligent, and voluntary' is a 'constitutional procedural duty.' " (*Daniels*, *supra*, 3 Cal.5th at p. 993.)

Our Supreme Court has encouraged judges to engage in a "robust oral colloquy" with criminal defendants to ensure they are fully aware of the rights they give up when waiving the constitutional right to a jury trial. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) The court recommended this include a discussion about "the basic mechanics of a jury trial," including the right to

participate in jury selection through counsel and being advised that all the jurors must agree for a verdict. (*Id*. at pp. 166, 169.) Based on the record before us, there was no robust oral colloquy. Thus, we cannot conclude based on the totality of the circumstances that Leyva waived his right to a jury trial "with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." (*Blancett*, *supra*, 15 Cal.App.5th at p. 1206.)

### *Restitution*

Leyva contends the trial court erred when it ordered him to pay restitution to the Oxnard Fire Department for its costs in fighting the fire. Because we reverse the judgment, we need not determine whether the facts of the case authorized the restitution order.

### DISPOSITION

The judgment is reversed.
<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

I concur:

GILBERT, P. J.

9

YEGAN, J., Dissenting:

I respectfully dissent. This meaningless reversal is an exaltation of form over substance. Considering the totality of the circumstances, I would conclude Leyva knowingly, intelligently, and voluntarily waived his right to a jury trial. In *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*), our Supreme Court "offer[ed] some general guidance" and "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Id.* at p. 169.) The Court also suggested that the trial court ask the defendant if he has had an adequate opportunity to discuss the decision with his lawyer and if he has any questions. (*Id.* at pp. 169-170.)

In concluding that the jury waiver here was invalid, the majority contends, "[t]he trial court failed to heed [the] guidance" provided by *Sivongxxay* because "[o]nly one of the four advisement was fully given," i.e., that the judge alone would decide the case. (Maj. opn. *ante*, at pp. 4-5.) But the guidelines provided in *Sivongxxay* are not mandatory. Indeed, the Supreme Court "emphasize[d] that [its] guidance [was] not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) Instead, the Court reiterated that "a trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid." (*Ibid.*)

The jury waiver in this case is not a "barebones colloquy" like that in *People v. Blancett* (2017) 15 Cal.App.5th 1200. There, the trial court "asked *only* if Blancett was 'okay' with a court trial instead of a jury trial." (*Id.* at p. 1206, italics added.) In addition to the "stark colloquy," we considered the lack of evidence that Blancett had discussed his jury trial right and waiver with counsel, his inexperience with the criminal justice system, and his lack of familiarity with the MDO (mentally disordered offender) proceedings. (*Id.* at pp. 1206-1207.) This case is unlike *Blancett* because the trial court's advisements here, taken together with Leyva's prior jury trial experience as indicated in the record, demonstrate that he was aware that (1) a jury is made up of 12 members of the community, (2) he could participate in jury selection through his attorney, and (3) by waiving his right to a jury trial, the judge would decide his guilt or innocence.

Although the trial court did not advise Leyva that a jury verdict must be unanimous, our Supreme Court has "never insisted that a jury waiver colloquy invariably must discuss . . . the unanimity requirement . . . for an ensuing waiver to be knowing and intelligent." (*Sivongxxay, supra,* 3 Cal.5th at p. 168.)

The record also reflects that Leyva had the opportunity to discuss the matter of waiver with his attorney both before and during the hearing, which also satisfied one of the "additional steps" recommended in *Sivongxxay* to ensure that a defendant comprehends what the jury trial right entails. (*Sivongxxay, supra*, 3 Cal.5th at p. 169.)

Nevertheless, the majority concludes that Leyva was not advised of "'the basic mechanics of a jury trial.'" (Maj. opn. *ante*, p. 8.) For example, the majority contends "the [trial] court did

2

not inquire whether counsel explained the differences between a jury trial and a court trial, or whether Leyva understood." (*Id.* at p. 6.) The majority also contends that "[t]he record does not reflect that Leyva and his counsel took a break from the proceedings to discuss his question [during the waiver colloquy], much less that Leyva received an answer to his question." (*Ibid.*)

First, the record does not show that Leyva's question went unanswered. Second, the majority overlooks the crucial role of counsel. "Counsel is presumed competent and informed as to applicable constitutional and state law . . . . Counsel . . . can be expected, where necessary or advisable, to consult with the client about jury trial concerns." (*People v. Barrett* (2012) 54 Cal.4th 1081, 1105; *People v. Daniels* (2017) 3 Cal.5th 961, 996 (lead opn. of Cuéllar, J.) ["Counsel plays a crucial part in transmitting information to the client [about waiver of the right to a jury trial]. Time and time again, our precedent has recognized as much, incorporating within the totality of relevant circumstances not only the fact of representation by counsel, but also record references to discussions between counsel and defendant"]; *Daniels*, at p. 999 ["Courts generally rely on counsel to transmit to defendants critical information about whether to waive the jury trial right and the consequences of waiving it"].)

Here, the record reflects that counsel expressly informed the trial court that she "discussed this matter with Mr. Leyva" and that he is "going to waive jury at this time." When the trial court informed Leyva that he had a right to a jury trial decided by 12 individuals, Leyva responded that he would "rather have a judge." The relevant circumstances here, including the colloquy, Leyva's prior trial experience, and the fact that he was represented by counsel, support the trial court's finding that

3

Leyva knowingly and intelligently waived his right to a jury trial.

The majority also relies on "[o]ther circumstances" to support its conclusion that "the prosecution has not established a valid waiver," specifically, the lack of a written waiver form and the absence of an express finding of voluntariness. (Maj. opn. *ante*, p. 7.) But the law has not mandated any specific method for finding a valid waiver. Rather, reviewing courts must examine the totality of the circumstances. (See *Sivongxxay, supra*, 3 Cal.5th at pp. 167, 169 ["eschew[ing] any rigid formula or particular form of words that a trial court must use in taking a jury waiver"]; *People v. Smith* (2003) 110 Cal.App.4th 492, 502 [no requirement that the court make an express finding that waiver was knowing and voluntary].)

Considering the totality of the circumstances here, I would conclude Leyva's jury waiver was knowing, intelligent, and voluntary. Accordingly, I would affirm the trial court's judgment.

NOT TO BE PUBLISHED.


YEGAN, J.

4

Derek D. Malan, Judge

Superior Court County of Ventura

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.