Filed 8/8/25  P. v. Gee CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYRONE ULYSIS GEE,<br><br>    Defendant and Appellant. | D083323<br><br><br>(Super. Ct. No. BAF2101139) |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy J. Hollenhorst, Judge.  Reversed and remanded for further proceedings.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Following a bench trial, the court found Tyrone Ulysis Gee guilty of attempted first degree murder (Pen. Code, §§ 664, 187, subd. (a); count 1),

assault with a semiautomatic firearm (§ 245(b); count 2), and being a felon in possession of a firearm (§ 29800(a)(1); count 3). It further found true allegations (1) as to count 1, that Gee personally and intentionally discharged a firearm, proximately causing great bodily injury or death (§§ 12022.53(d), 1192.7(c)(8)); and (2) as to count 2, that Gee personally inflicted great bodily injury (§§ 12022.7(a), 1192.7(c)(8)) and personally used a firearm (§§ 12022.5(a), 1192.7(c)(8)). The court sentenced Gee to an aggregate prison term of 54 years to life.

On appeal, Gee contends his jury trial waiver was not knowing and intelligent because he was inadequately advised of the rights he was relinquishing, so reversal is required. Considering the totality of the circumstances, we agree. In particular, given Gee's learning disabilities, his limited education, his history of mental illness, and indications his basic competence for trial depended on him taking antipsychotic medications, the trial court at a minimum should have ensured Gee understood the important right he was relinquishing. We therefore reverse and remand for further proceedings consistent with this opinion.

## I.

According to his probation report, Gee "stopped attending school after the sixth grade due to his psychiatric and learning disability diagnoses."

In September 2021, Gee shot his neighbor in the face, resulting in the charges of which he was ultimately convicted.

## A.

Gee's counsel declared doubt as to Gee's competency to stand trial. The court appointed doctors to examine Gee and to furnish reports addressing the issue.

One examiner opined Gee was "trial competent" but noted "this [competency] could change in the event [Gee] was to develop psychotic symptoms." He indicated it was "quite clear" Gee's medical history was "consistent with diagnoses of Schizophrenia and Schizoaffective Disorder." Gee had a history of being "prescribed a number of antipsychotic medications," and "that remains the case." Thus, Gee "clearly needs to continue to take the prescribed psychotropic medications."

Another doctor also concluded Gee was "competent to stand trial now," although he, too, noted Gee was on antipsychotic medication and had diagnoses of schizoaffective disorder and bipolar disorder.

In October 2021, the court found Gee competent to stand trial.

B.

In February 2022, the court granted Gee's motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806.

Under Judicial Council of California emergency orders issued due to the Covid-19 pandemic and over Gee's objection, the court extended Gee's last day to proceed to trial multiple times.

In August 2022, Gee indicated his willingness to proceed with a bench trial if it would speed up his trial date. The court took his jury trial waiver on August 25. The colloquy was as follows:

> COURT: So you understand that you have a right to have twelve members of the community sit in judgment of your case and determine whether you are or are not guilty. Do you understand that you have that right?
>
> [GEE]: Yes, sir.
>
> COURT: And are you willing to waive and give up that right in order to have a court trial?

3

| | |
|---|---|
| [GEE]: | Yes, sir. |
| COURT: | All right. |
| [GEE]: | Can I ask you one question, your Honor? |
| COURT: | Yes, sir. |
| [GEE]: | All the case law that I read is about jury trial[s], not bench trial[s].  Is the burden lesser?  Is it— |
| COURT: | No. |
| [GEE]: | —still beyond a reasonable doubt? |
| COURT: | It's still beyond a reasonable doubt.  Nothing changes.  Nothing changes.  The only thing that changes is the judge makes the decision. |
| [GEE]: | Okay.  I got you.  I'm ready. |

The bench trial commenced five days later.  The court found Gee guilty of all the charges and found true all the alleged enhancements.

## II.

We summarize the relevant law first and then proceed to the merits of Gee's claim.

## A.

Under both the federal and California Constitutions, a criminal defendant has the right to a jury trial.  (*People v. Weaver* (2012) 53 Cal.4th 1056, 1071.)  A defendant can, however, waive that right.  (*Ibid.*)  As relevant here, a valid waiver must be "knowing and intelligent, that is, made with a full awareness both of the nature of the right being abandoned and the

4

consequences of the decision to abandon it." (*People v. Collins* (2001) 26 Cal.4th 297, 305 [cleaned up].)

To ensure a jury trial waiver is knowing and intelligent, our high court "recommend[s] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 169.) The court further "recommend[s] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails." (*Ibid.*) Other factors our high court has considered relevant in deciding whether a waiver is knowing and intelligent include whether the defendant is represented by counsel, "record references to discussions between counsel and defendant," "the existence and contents of a written waiver," a defendant's "legal sophistication," whether the defendant initiated the waiver, and the defendant's prior experience with the criminal justice system. (*People v. Daniels* (2017) 3 Cal.5th 961, 991, 994, 996, 1000-1002 (conc. & dis. opn. of Cuéllar, J.).)

We will uphold a jury waiver's validity "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the

5

circumstances." (*Daniels*, 3 Cal.5th at p. 991 (conc. & dis. opn. of Cuéllar, J.) [cleaned up].)[1]

B.

Gee contends the record does not affirmatively demonstrate his jury trial waiver was knowing and intelligent. Based on the totality of the circumstances, we agree.

To begin, the court's jury trial waiver colloquy touched on only two of the four recommended *Sivongxxay* advisements. Although Gee was informed a jury would comprise 12 community members and the judge would decide his guilt if he waived his jury trial right, he was not advised a jury would have to vote unanimously to convict him or he had a right to be involved in jury selection. (*Sivongxxay*, 3 Cal.5th at p. 169.) By *Sivongxxay*'s plain words, these advisements were not required for Gee's waiver to be valid. (*Id.* at p. 170 ["[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid"].) Yet the unanimity requirement is a meaningful piece of information for a criminal defendant, as it is necessarily harder to convince 12 people of another's guilt than a single individual. Gee also did not sign a written jury trial waiver informing him of these advisements. While the People are correct that a written waiver is not required, it nonetheless remains a relevant consideration. (Citing *People v. Weaver* (2012) 53 Cal.4th 1056, 1074.)

---

[1] In his briefing, Gee contends "'[t]he burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the matter to speculation, and doubtful cases will be resolved against a waiver.' (*People v. Smith* (2003) 110 Cal.App.4th 492, 500-501.)" The basis for *Smith*'s statement is unclear, as the case it cites as authority does not support that proposition. We accordingly decide this matter without reference to *Smith*'s purported rule.

Further, Gee was self-represented, and nothing in the record indicates he discussed his jury trial rights with his counsel before counsel's dismissal. As Justice Cuéllar noted in his concurring and dissenting opinion in *Daniels*, "[c]ourts generally rely on counsel to transmit to defendants critical information about whether to waive the jury trial right and the consequences of waiving it." (*Daniels*, 3 Cal.5th at p. 999 (conc. & dis. opn. of Cuéllar, J.) While self-represented defendants are certainly capable of waiving their jury trial rights, a lack of counsel is nonetheless part of the context informing the court's determination as to what information it needs to convey during the colloquy. Here, Gee had been self-represented for six months before his jury trial waiver, which greatly diminishes the likelihood anyone other than the court advised him of what he was giving up by forgoing his right to a jury trial.

And while Gee filed numerous motions during the time he represented himself, those motions—most of which were summarily denied for procedural defects—do not appear to show any level of legal sophistication relevant to whether Gee understood his jury trial rights.

Most importantly here, the court entirely overlooked *Sivongxxay*'s recommendation to "take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails." (*Sivongxxay*, 3 Cal.5th at p. 169.) On this record, that failure rendered Gee's waiver unknowing and unintelligent.

Gee has a sixth-grade education, having dropped out of school due to his learning disabilities and mental health issues, including diagnoses of schizophrenia and, later, schizoaffective disorder. One of the examiners who found Gee competent to stand trial noted his competency could change if he were to develop psychotic symptoms, so Gee "clearly needs to continue to take

7

the prescribed psychotropic medications." With Gee's basic competency dependent on medication, at a minimum the court should have assured itself Gee was taking his medication at the time of his jury trial waiver. It did not do so. Having failed to ensure Gee's psychotic symptoms were controlled by his medication such that he could understand what his jury rights were and the consequences of waiving them, the court here inadequately advised Gee.

While other considerations may lend some support to the conclusion Gee's waiver was knowing and intelligent, they are insufficient to overcome the above factors, which strongly weigh against finding Gee's jury waiver knowing and intelligent.

For example, Gee himself initiated discussions about waiving his jury trial right and proceeding with a bench trial (see *Sivongxxay*, 3 Cal.5th at p. 167), but only "[i]f it's going to speed up the process," which appeared to be his primary concern. And though not part of his jury trial waiver colloquy, the record shows Gee was advised, six months earlier when he petitioned to represent himself, that he was "going to be required to know how to pick a jury." (*People v. Morelos* (2022) 13 Cal.5th 722, 755.) This statement, however, falls short of an advisal of Gee's constitutional right to participate in jury selection. Gee further has a significant criminal history with multiple exposures to the justice system that may suggest he "comprehend[ed] what the jury trial right entails." (*Sivongxxay*, 3 Cal.5th at p. 169.) Specifically, Gee entered multiple guilty pleas in 1987 and 1992, and in 1999 he was convicted by a jury of committing multiple lewd acts against a minor and sentenced to a cumulative prison term of 23 years. *Daniels* stressed that "when criminal history is brought to bear on an inquiry into a waiver of the right to a jury trial in favor of a bench trial, the most relevant experience is *previously having undergone a criminal trial*." (*Daniels*, 3 Cal.5th at p. 1001

8

(conc. & dis. opn. of Cuéllar, J.).) But given Gee's limited education, his learning disabilities, his psychiatric diagnoses, and the remoteness of his exposures to the criminal justice system, we cannot say his criminal history informed his jury trial waiver. When weighed against the countervailing considerations, including the record's silence about whether Gee was taking the psychotropic medications necessary to maintain his competency, these factors supporting waiver fail to persuade us Gee's jury trial waiver was valid.

The People claim "[t]he trial court's advisements here provided more information about the nature of a jury trial than the advisements given in" *Morelos*, in which a self-represented defendant was advised only of his "constitutional right" to have 12 individuals determine his guilt. (*Morelos*, 13 Cal.5th at p. 754.) But here Gee was not informed the procedure he was giving up was constitutional in nature, a significant fact because it conveys the gravity of the right he was waiving. Also, unlike in *Morelos*, Gee was not asked whether he *understood* the right he was relinquishing. (*Ibid.*) As noted above, given the record evidence of Gee's mental health issues, the court's colloquy fails to inspire confidence Gee was in a position to understand.

In sum, having considered the totality of the circumstances, we conclude the record here does not affirmatively demonstrate Gee's jury trial waiver was knowing and intelligent. His waiver, therefore, is invalid. We acknowledge trial courts are generally in the best position to assess what advisements will sufficiently inform a given defendant of the differences between a jury and bench trial. Ultimately, however, what is required depends on the individual circumstances of the defendant and the thoroughness of the waiver colloquy. Here, we conclude the record does not

9

affirmatively establish Gee's waiver of his jury trial right was knowing and intelligent under the totality of the circumstances. (See *Daniels*, 3 Cal.5th at p. 991 (conc. & dis. opn. of Cuéllar, J.). Accordingly, we must reverse.

III.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

CASTILLO, J.

WE CONCUR:

DO, Acting P. J.

KELETY, J.

10