Filed 11/18/25  P. v. Hasan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAWWAAD XAVIER HASAN,<br><br>  Defendant and Appellant. | D085434<br><br><br>(Super. Ct. No. SCD302522) |

APPEAL from a judgment of the Superior Court of San Diego County, Kristopher S. Young, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

Jawwaad Xavier Hasan appeals from a final judgment following a jury trial.  He contends (1) the trial court failed to obtain a valid waiver of his right to counsel and (2) the case should be remanded to determine whether Hasan was competent to waive his right to counsel and to stand trial under

*Indiana v. Edwards* (2008) 554 U.S. 164 (*Edwards*).  Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The People charged Hasan with one count of resisting an executive officer (Pen. Code,[1] § 69) and one count of misdemeanor trespassing (§ 602, subd. (o)(1)).  The complaint included 11 prior strike allegations under sections 667, subd. (b)–(1); 1170.12; and 668, and an allegation that Hasan was ineligible for probation under section 1203, subdivision (e)(4).  We omit the facts underlying these offenses because they are not challenged on appeal or relevant to our resolution of the issues presented.

In February 2024, the court held a hearing regarding Hasan's decision to represent himself.  The deputy public defender representing Hasan provided him with a *Faretta/Lopez* waiver and counsel provided Hasan's signed waiver to the court.  On the form, Hasan listed his charges, provided his educational and work background, and wrote the maximum punishments upon conviction for each count.  On the form's second page, Hasan initialed several paragraphs describing the dangers and disadvantages of self-representation, including that self-representation "is almost always unwise," he would get no "special treatment or favors," he may "be unaware of . . . potential defenses," and "that being incarcerated will make it difficult . . . to contact witnesses and investigate" his case.  On the third page, Hasan signed the form acknowledging he was requesting to represent himself "freely and voluntarily."

At the hearing, the court questioned Hasan about his understanding of his constitutional right to counsel and the nature of the charges against him. Hasan explained he understood and had represented himself in the past

---

[1]    Undesignated statutory references are to the Penal Code.

when facing similar charges and received an acquittal. The court asked Hasan whether he had signed the waiver and whether he had any questions about the form. Hasan responded that he had signed the form, had no questions, and was "fully aware of the form and what rights [he had]." The court further explained that there are "dangers and disadvantages" to representing oneself, that Hasan would not be given any special treatment by the court, that failure to comply with the rules could result in a conviction, and that he would be facing a prosecutor with a "full legal education." Hasan responded that he understood. The court questioned Hasan about his education. Hasan explained he had a high school diploma and a "creative writing degree from UCLA." Hasan also explained he had represented himself a "a couple years ago" when he was charged with "trespassing and assault with a deadly weapon" and he prevailed. The court then asked why Hasan was requesting to represent himself and Hasan responded by saying, "[b]ecause these are false charges." The court explained it did not recommend that Hasan waive his right to an attorney and Hasan stated he understood and persisted in his request. The court granted Hasan's request for self-representation and excused the appointed attorney.

The trial court proceeded with the arraignment during which Hasan requested a signed copy of the complaint and that his true name, "William Archibald," be used instead of the AKA. Hasan then pleaded not guilty to the charges in the complaint.

The court asked Hasan whether he wished to address the issue of bail which was set at $100,000. Hasan responded that bail should be set lower and requested release on his own recognizance, stating that he works and owns property in the community, and is connected to Father Joe's charity. The prosecutor opposed a reduction explaining Hasan has a history of

3

trespassing, does not own the building he claims to own, and has an "extensive drug history" and "some mental health struggles." The court reduced bail to $30,000 and ordered Hasan to stay 100 yards away from the building in question.

At the preliminary hearing, Hasan explained his true name is "William Xavier Archibald" and he does not know why "Jawwaad Hasan" is the name on the complaint. The court noted the correction for the record and the People agreed to "create a clean copy [of the pleadings] with the correct name."

Hasan then expressed his intention to file a "[section] 995 motion." The court explained it was premature to file a section 995 motion. Hasan responded by saying the complaint itself was defective and it "should have never proceeded to arraignment." Specifically, Hasan alleged he was not timely arraigned, in violation of the 48-hour rule. The People argued that pursuant to his speedy trial rights under section 1328, "the defendant needs to be arraigned within three court days of his arrest." The court then explained the 48-hour rule in section 825 "excludes Sundays and holidays" and because Hasan was arrested on a Saturday "it's as if he was arrested on [Monday] and then needed to be arraigned within 48 hours of that date." Accordingly, the court denied Hasan's motion to dismiss.

Hasan then moved to dismiss on the ground that his copy of the complaint was not signed. The court explained that the copy of the complaint in the court's file was signed and the court could provide Hasan with a copy of the signed complaint. Hasan argued the copy of the complaint with the signature was fraudulent. The court denied Hasan's motion to dismiss because the complaint "in the file does have a signature."

4

Hasan then requested a copy of the police report and the People noted Hasan had not received discovery. Hasan stated he was not waiving time and "would trail to [the] afternoon" as he just needed an "hour or two to look over" the reports. After a recess, the People provided all of the physical discovery to Hasan. Hasan agreed that he would view the bodyworn camera footage "later on."

In the afternoon, the court continued with the preliminary hearing during which the People presented two police officers. Hasan conducted cross-examinations of the witnesses. Hasan also testified himself on direct examination, posing questions and then answering them. He then gave a closing argument alleging the People had not "met their burden of probable cause." The court concluded, "Based on the evidence presented during this preliminary hearing, it appears to the Court that there's probable cause to believe that the offenses charged in counts 1 and 2 have been committed and that the defendant is guilty thereof."

On May 3, 2024, the People filed an amended information amending count 1 to resisting an executive officer under section 69. Count 2 and the allegations remained unchanged.

In early May 2024, the morning of the jury trial, Hasan requested counsel and the court appointed a public defender to represent Hasan. The trial was continued to a later date. In late May, the court held a *Marsden* hearing to address Hasan's concerns over the public defender representing him. Hasan then requested to continue representing himself and the court granted his request.

On June 20, 2024, Hasan proceeded to trial without an attorney. Hasan participated in jury selection and questioned prospective jurors. During the trial, Hasan gave an opening statement, conducted cross-

5

examinations, testified, and gave a closing argument. The jury found Hasan guilty of both counts and found true the prior strike allegations.

On June 26, 2024, Hasan requested an attorney to represent him during sentencing. The court reappointed a public defender to represent Hasan.

On August 2, 2024, upon Hasan's request, the court held a *Marsden* hearing and denied his request to dismiss the public defender. The court then ordered Hasan removed from the courtroom due to an outburst. Defense counsel requested that proceedings be suspended pursuant to section 1368 because of concerns about Hasan's ability "currently to understand the nature of the proceedings and to assist counsel." The court suspended proceedings and ordered a mental health evaluation on Hasan.

On November 7, 2024, the court received into evidence two reports on Hasan's mental competency to stand trial and two reports on "involuntary medication to restore competency." The court then found Hasan "not mentally competent." The court also authorized the involuntary administration of antipsychotic medication to Hasan.

On December 4, 2024, the court received an additional medical report and again found Hasan not mentally competent and ordered him committed to Patton State Hospital for a maximum term of two years.

On January 13, 2025, Hasan filed a notice of appeal.

DISCUSSION

On appeal, Hasan contends "the case should be conditionally remanded to the trial court for a retrospective determination of [his] competence to stand trial and to waive his right to counsel." He argues *Edwards, supra,* 554 U.S. 164, in which the United States Supreme Court upheld a state's denial of the right to self-representation to a severely mentally ill defendant,

6

should be extended to apply in this case.[2]  Finding no error, we affirm the judgment.

A.    *Legal Principles*

The Sixth Amendment to the United States Constitution provides criminal defendants both the right to assistance of counsel and the right to self-representation.  (U.S. Const., 6th Amend.)

In *Faretta v. California* (1975) 422 U.S. 806, the court determined the Sixth Amendment right to counsel, included the right of a criminal defendant to self-representation, provided the defendant makes a knowing, voluntary, and intelligent waiver of the right to counsel.  The fact that a trial judge may have doubts as to the defendant's understanding of the law and the person's ability to conduct a criminal trial does not permit a court to deny a defendant the constitutional right to self-representation.  (*Id*. at p. 835.)

Subsequently, in *Godinez v. Moran* (1993) 509 U.S. 389, 396, 400–401 (*Godinez*), the court clarified that the standard for competence to waive counsel is identical to the standard for competence to stand trial announced in *Dusky v. United States* (1960) 362 U.S. 402.  Under *Dusky*, "the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' "  (*Godinez,* at p. 396.)

Later, in *Edwards*, the United States Supreme Court faced the question of "whether the Constitution *required* the trial court to allow Edwards to represent himself at trial." (*Edwards, supra*, 554 U.S. at p. 169, italics added.)  The *Edwards* court departed somewhat from *Faretta*'s strict

_____

[2]    Hasan initially alleged the court failed to obtain a valid waiver of his right to counsel, but now agrees he was properly advised and concedes this point.  We agree and accept the concession.

7

waiver standard and held that where a defendant, although competent to assist counsel, suffers from mental disability such that the person cannot competently represent him or herself, the state may deny self-representation. (*Id*. at p. 171.)

As the language of *Edwards* makes clear and the California Supreme Court has confirmed, *Edwards* allows states to adopt a higher standard for competency to conduct trial than the *Dusky* standard for competency to stand trial, only when the defendant's severe mental illness inhibits the defendant's competency to conduct the trial proceedings alone. (*Edwards, supra*, 554 U.S. at pp. 177–178; *People v. Taylor* (2009) 47 Cal.4th 850, 877–878.) However, *Edwards* " 'does not *mandate* the application of such a dual standard of competency for mentally ill defendants.' " (*Taylor,* at p. 878.) As long as the defendant is competent to stand trial and makes a knowing, voluntary, and intelligent waiver of counsel, there can be no federal constitutional error in permitting the defendant to represent himself or herself. (*Ibid*.)

In *People v. Johnson* (2012) 53 Cal.4th 519, 530 (*Johnson*), the California Supreme Court announced a standard for denying self-representation in line with what *Edwards* permitted: "[W]e believe the standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." The *Johnson* court explained that "[a] trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence." (*Ibid*.) The *Johnson* court further

clarified that "[s]elf-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations where *Edwards* permits it." (*Id*. at p. 531.)

We review the trial court's determination of the defendant's competence for substantial evidence, and we review de novo whether the waiver was voluntary, knowing, and intelligent. (*People v. Orosco* (2022) 82 Cal.App.5th 348, 358.)

B.    *Analysis*

Hasan contends the medical reports submitted to the court before sentencing suggest he was not competent to stand trial and that the trial court erred by allowing him to represent himself. We disagree. We begin by addressing whether his initial decision to forego representation was knowingly and intelligently made, then we address whether substantial evidence supports the finding that Hasan was mentally competent to represent himself throughout the proceedings.

1.    *Faretta* Waiver

Hasan contends the medical reports finding him not competent at the sentencing stage "leave doubts about [his] competence when he waived his right to counsel." To the extent Hasan is arguing his waiver was not knowingly, voluntarily, and intelligently made, we are not persuaded.

The record here shows Hasan was able to complete the *Faretta* waiver form and adequately understood its contents. His attorney stated he "had [Hasan] fill out the *Faretta-Lopez* form" and the court confirmed Hasan was aware of the disadvantages of self-representation. Hasan acknowledged he

9

understood the significance and consequences of his decision, he was able to express himself rationally, and he described the prior case in which he represented himself and won.  Notably, he successfully argued for a reduction in bail.  Hasan's statements to the court and his answers in the *Faretta* form thus communicated an informed desire to represent himself "consistent with a voluntary and intelligent waiver."  (*People v. Miranda* (2015) 236 Cal.App.4th 978, 986–987; see also *Faretta, supra*, 422 U.S. at pp. 835–836 [defendant's waiver was voluntary where the record affirmatively showed he "was literate, competent, and understanding" and trial judge had "warned [him] that he thought it was a mistake not to accept the assistance of counsel, and that [he] would be required to follow all the 'ground rules' of trial procedure"].)

### 2. *Mental Competence for Self-Representation*

Having concluded Hasan's initial waiver was valid, we analyze next whether substantial evidence supports the court's determination that he was competent to represent himself.  (*Johnson, supra*, 53 Cal.4th at p. 531.)

Applying *Edwards* and *Johnson*, we conclude substantial evidence supports the trial court's determination that Hasan was sufficiently mentally competent to represent himself.  To begin, *Edwards* and *Johnson* both require that the defendant's incompetence to represent himself derive from a "severe mental illness."  (*Edwards, supra*, 554 U.S. at p. 178; *Johnson, supra*, 53 Cal.4th at p. 530.)  At no point in the proceedings did the record before the trial court compel a finding that Hasan suffered from a *severe* mental illness.  There was no expert testimony and no medical documentation on the subject, and although the record indicates Hasan suffers to some extent from mental health issues, substantial evidence supports the court's determination he

could perform "the basic tasks needed" to present a defense without the help of counsel. (*Johnson,* at p. 530.)

For example, Hasan reasonably questioned the length of time between his arrest and his arraignment, prompting the court to ask the prosecution for authority supporting its position that there was no delay. He questioned potential jurors, gave an opening statement, cross-examined the People's witnesses, elicited relevant testimony, testified in his own defense, and gave a closing argument. He showed he had done legal research to support his arguments at various points in the proceedings and used the exhibits to assist in his cross-examinations. Although the trial court frequently had to instruct Hasan to rephrase his questions, he was responsive enough to the court's directives to present evidence in support of his various defense theories.

This is not to say Hasan's self-representation was skillful. He submitted unsuccessful or inapplicable motions and filings, procured no expert testimony or documentation regarding mental illness, and presented contradictory and unpersuasive versions of events in his testimony. But the quality of Hasan's legal acumen was not such that the court was compelled to hold a competency hearing, especially given that courts are to be "cautious" in deciding whether to inquire into a self-represented defendant's competence. (*Johnson, supra*, 53 Cal.4th at pp. 530–531.)

Hasan now contends the case should be remanded for a "retrospective determination" of whether he was competent to stand trial and represent himself. He points to his "grandiose testimony about running businesses— despite being homeless" as evidence that "his mental problems were operative at the trial." While some of Hasan's claims were unusual, such as his testimony that he "contact[ed] the Pentagon and state department" when

11

the officers kicked in his door, nothing suggested he had a *severe* mental illness that prevented him from performing the tasks necessary for a defense. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 271 ["[E]vidence of mental illness alone is not sufficient to raise a doubt about a defendant's competence to stand trial."]; *People v. Johnson* (2018) 6 Cal.5th 541, 552, 578 [expert testimony that the "defendant suffered some from psychosis with 'some kind of a thinking disorder' " did not obligate the trial court to conduct a competency hearing].) In fact, the trial court commented, on multiple occasions, that Hasan was "doing very well" and "did a good job" conducting his own direct examination, and that his questioning on the prior strike conviction allegations was "well done"

Once Hasan's attorney voiced concerns about his mental health, the trial court explained, "I never felt he was [section] 1368, nor did I feel he was insane. I did feel that he was somewhat arrogant, paranoid, eccentric [. . . .] He was, I think, reasonably good at trial." Thus, the trial court made it clear there was no evidence during the proceedings that warranted an inquiry into Hasan's competency. (See *Johnson, supra*, 53 Cal.4th at p. 531 [deference to a trial court's competence determination "is especially appropriate when . . . the same judge has observed the defendant on numerous occasions"].) The strict standard imposed by *Edwards* and *Johnson* requires the existence of a severe mental illness that prevents a defendant from performing the basic tasks necessary for presenting a defense. (*Id.* at p. 530.) In the absence of sufficient evidence showing Hasan had such an illness or could not perform these tasks, we conclude substantial evidence supports the trial court's determination that a psychological evaluation was not necessary, and that Hasan was mentally competent to represent himself.

Moreover, while Hasan contends the "record leaves doubts about [his] competence when he waived his right to counsel and when the trial occurred," he also acknowledges "the record does not reflect any concern by the trial court and the attorneys regarding [his] competence to represent himself during pretrial proceedings and the trial." Thus, "[i]n the absence of evidence sufficient to find incompetency as a matter of law, or a retroactive finding of incompetency by the trial court, we cannot find the later incompetency finding . . . reaches back to some unknown and unidentified point in earlier proceedings." (*People v. Smith* (2003) 110 Cal.App.4th 492, 505.)

DISPOSITION

We affirm the judgment.

KELETY, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.